**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

IRIS CERVANTES,

Plaintiff,

v.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, et al.,

Defendants.

Case No. 1:26-cv-00135 JLT FJS

ORDER GRANTING MOTION TO COMPEL ARBITRATION, DISMISSING CLASS CLAIMS, STAYING THIS ACTION, AND DIRECTING THE FILING OF STATUS REPORTS

(Doc. 8)

JPMorgan Chase Bank, N.A., moves to compel arbitration of the claims by plaintiff Iris Cervantes, its former employee. (Doc. 8.) As explained below, the motion is **GRANTED**, and this action is **STAYED** pending a further order of this court.

Cervantes worked for JPMorgan as a non-exempt employee between 2022 and 2025, where she was paid on an hourly basis. (Doc. 1 at 14.) She alleges that JPMorgan required her to work without pay and to work during her meal and rest breaks, among other similar allegations. (*See id.* at 15–16.) She asserts several wage and hour claims on her own behalf and proposes a class action on behalf of similarly situated employees. (*See id.* at 22–56.) She also asserts claims for wrongful termination and discrimination based on her allegation that the bank discharged her after she reported that she was experiencing medical complications related to her pregnancy. (*See id.* at 56–60.)

JPMorgan removed the case to federal district court. In a previous order, this Court denied Cervantes's motion to remand the action to state court on reconsideration. (*See* Docs. 21, 31.) JPMorgan now moves to compel arbitration under the Federal Arbitration Act. (*See* Doc. 8.) That motion is fully briefed, and the Court determined that oral arguments would not be necessary. (*See* Docs. 12, 14, 15.)

Written arbitration agreements are "valid, irrevocable, and enforceable," under the FAA. 9 U.S.C. § 2. A party to an arbitration agreement may petition a federal district court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. The Court's task in response to such a motion begins with two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (2015). A federal court employs the "ordinary state law principles that govern contract formation" when it decides whether the parties have reached an agreement to arbitrate a particular dispute. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).

JPMorgan has filed copies of the relevant documents, and there is no dispute but that they are authentic. (*See* Doc. 8-4 at 4–16.) In the offer letter JPMorgan sent to Cervantes in 2017, it made clear that she could accept the job only if she signed a "Binding Arbitration Agreement." (*Id.* at 6.) That agreement was attached. (*See id.* at 11–16.) It states that it covers "all legally protected employment-related claims" that she might have against the company, including future claims. (*Id.* at 11.) By way of example, it lists "claims of employment discrimination or harassment," "retaliation," and "failure to pay wages," like those in this lawsuit. (*Id.*) The arbitration agreement also includes a class action waiver. (*See id.* at 12 ("All Covered Claims under this Agreement must be submitted on an individual basis. No claims may be arbitrated on a class or collective basis unless required by applicable law.").) Cervantes's digital signature appears at the end of the agreement, and she does not dispute that she signed it. (*See id.* at 16.) There is accordingly no doubt here that an arbitration agreement was formed and that it covers the claims in this case.

Cervantes opposes JPMorgan's motion based solely on her argument that the agreement is unconscionable as a matter of California law and cannot be enforced. (*See, e.g.*, Doc. 12 at 6.) "[G]enerally applicable contract defenses," including "unconscionability" under state law, can bar the enforcement of an arbitration under the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). A contract is unconscionable under California law if it is unconscionable in both the procedural sense (i.e., it was signed in oppressive circumstances and its meaning is difficult to ascertain) and the substantive sense (i.e., it is overly harsh and unfair). *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (2024) (citing *Armendariz v. Found Health Phychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)).

Adhesive employment contracts—those an employer imposes "as a condition of employment" without any "opportunity to negotiate"—are unconscionable in the procedural sense. *Armendariz*, 24 Cal. 4th at 114–15; *see also, e.g.*, *Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 103–05 (2026); *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126–28 (2019). Cervantes is therefore right to argue that the contract she signed is at least minimally unconscionable in the procedural sense. But the evidence does not support her position that it was highly unconscionable. There is no evidence to suggest, for example, that a someone put pressure on her to sign, that someone lied to or misled her about the agreement's terms, that she had little time to review it, or that it was presented to her in an illegible or confusing format. *Cf., e.g.*, *Fuentes*, 19 Cal. 5th at 104–05; *OTO*, 8 Cal. 5th at 127–28. The agreement is relatively long, and it includes many phrases that may be meaningless to nonlawyers, but Cervantes has not offered evidence to show that she could not take the time to understand it or to ask an attorney for help, if necessary. The agreement is procedurally unconscionable, but only minimally so. *See, e.g.*, *Ayala-Ventura v. Superior Court*, 119 Cal. App. 5th 241, 254 (2026), *review denied* (June 17, 2026) (finding a similar agreement was only minimally unconscionable in the procedural sense).

"[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Gentry v. Superior Court* 42 Cal. 4th 443, 469 (2007),

*abrogated in part on other grounds as stated in OTO*, 8 Cal.5th at 129, n.10). Cervantes cites several provisions that, in her view, make the arbitration agreement unfair and one-sided.

Cervantes first contends that the agreement is substantively unconscionable because it is vague, far-reaching, indefinite, and offers one-sided benefits to a variety of third parties. (*See* Doc. 12 at 12–16.) She relies heavily on the California Court of Appeal's decision in *Cook v. University of Southern California*, 102 Cal. App. 5th 312, 329–30 (2024). The Ninth Circuit and the state Court of Appeal recently rejected similar comparisons in *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th Cir. 2026) and *Ayala-Ventura*, 342 Cal. App. 5th 241. Like the agreements in *Cocom* and *Ayala-Ventura*, the language of the agreement in this case implies straightforwardly that it is limited to employment disputes and does not reach the wide variety of tort and third-party claims that Cervantes suggests. (*See, e.g.*, Doc. 8-4 at 11 (referring to "employment-related claims, . . . which arise out of or relate to [Cervantes's] employment or separation from employment with JPMorgan Chase").) "The fact that the [agreement] is limited to employment-related disputes imposes an inherent limitation on [its] duration." *Cocom*, 179 F.4th at 1178; *see also Ayala-Ventura*, 342 Cal. App. 5th at 257–58 (reasoning similarly). This same limitation strips the agreement of the sort of one-sided effects that it might otherwise have had. *See Cocom*, 179 F.4th at 1179; *see Ayala-Ventura*, 342 Cal. App. 5th at 258–60.

Cervantes next contends that the agreement is unconscionable because she was required to waive her right to a jury trial preemptively, even for claims that will not be arbitrated. (*See* Doc. 12 at 16–17.) This is the paragraph she cites to support her argument:

> JPMorgan Chase believes that if a dispute related to an employee's or former employee's employment arises, it is in the best interests of both the individual and JPMorgan Chase to resolve the dispute without litigation. Most employment disputes are resolved internally through the Firm's Open Communication Policy. When such disputes are not resolved internally, JPMorgan Chase provides for their resolution by binding arbitration as described in this Binding Arbitration Agreement ("Agreement"). By signing this Agreement you acknowledge that you waive your right to bring claims in court or to resolve them before a jury. "JPMorgan Chase" and the "Firm" as used in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries.

(Doc. 8-4 at 11.) With this context, it is clear that the agreement's reference to a "jury"

emphasizes simply that if a particular dispute is subject to arbitration, then the employee must participate in arbitration with an arbitrator rather than a trial before a judge or jury. It is not unfair or harsh. *See Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 579 (2021) (enforcing an agreement with similar language).

Cervantes also argues the agreement is unconscionable because it does not guarantee adequate discovery. (*See* Doc. 12 at 18–19.) The agreement provides that "the provision of discovery must be consistent with [the agreement as a whole], general standards of due process, the Rules of AAA and the expedited nature of arbitration." (Doc. 8-4 at 14.) It gives the arbitrator authority to "expand or restrict the scope of discovery within his or her reasonable discretion, and the rules of AAA consistent with the expedited nature of arbitration." (*Id.*) Cervantes has not explained why these limits are unfair or harsh. It is possible, of course, that the AAA rules might be inadequate or inappropriate in some cases, but Cervantes does not explain why she believes they are inadequate or inappropriate in this one. She argues only that "the Arbitrator in his or her sole discretion can preclude [her] from obtaining formal discovery." (Doc. 12 at 20.) California courts "assume that the arbitrator will operate in a reasonable manner in conformity with the law." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010)). They have "upheld the validity of similar provisions giving the arbitrator broad discretion to control discovery." *Id.* (citing *Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009)); *see also, e.g.*, *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1081 (2003) (enforcing arbitration agreement with a discovery limit because it was not "evident from the agreement that [the plaintiff] will be unable to obtain adequate discovery"). The discovery provisions do not make the agreement unconscionable.

Finally, Cervantes advances a number of narrower arguments, including that JPMorgan should have provided her with a copy of the AAA rules, that the agreement does not ensure adequate judicial review, and that it includes an unlawful waiver of representative claims under the California Private Attorneys General Act. (*See* Doc. 12 at 17–18.) These arguments are not persuasive. *See, e.g.*, *Cocom*, 179 F.4th at 1179–80 (holding that a PAGA waiver, if unconscionable, was severable); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854,

868 (N.D. Cal. 2024) (rejecting similarly generic unconscionability arguments about the AAA rules); (Doc. 8-4 at 15 ("The decision will be final and binding upon the Parties, and appeal of the decision to a court shall be limited as provided by the FAA.").); *see also* 9 U.S.C. §§ 9–11 (governing confirmation, vacation, modification, and correction of arbitral awards).

For these reasons, Cervantes has not shown that the arbitration agreement is substantively unconscionable. The motion to compel arbitration (Doc. 8) is therefore **GRANTED**. Cervantes is directed to submit her individual claims to binding arbitration in accordance with the arbitration agreement discussed in this order. The class claims are **DISMISSED** without prejudice under that agreement, and this action is **STAYED** pending a further order of this Court. *See* 9 U.S.C. § 3. The parties are directed to file a joint report on the status of the arbitration every sixty days, until the arbitration concludes. The parties are further directed to file a joint status report within fourteen days of the conclusion of arbitration.

IT IS SO ORDERED.

Dated: _November 2, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE